On Rehearing.
White, J.
After a careful re-examination of this cause we have concluded that our former decree was correct and should be adhered to :
1. Because the bonds were issued in exchange almost entirely for warrants, called “ red-back warrants,” previously stricken with nullity by decree of this court.
2. Because, ev^a if the commissioners were authorized to'fix the amount of parochial debt by including therein whatever of valid debt may have entered into the outstanding and declared illegal warrants, as a matter of fact they did not so do, but, on the cpntrary, made the. illegal warrants the measure -of debt without reference to the quantum ot legal consideration merged or apparently merged in the illegalwarrants.
3. Because finding this state of equities, which we deem adequate to prevent recovery in the hands'of the original holders, we do not think the holders now before us have shown that they are holders under such circumstances as to entitle them to the immunities of the law merchant. We say “have not shown,” for we think the equities-having been affirmatively established the burden was on them, under the pleadings and law, to have made such proof as would.remove the claim in-their hands from the reach of such established defenses, which must other-' wise prevail. Daniels on Negotiable Instruments, number 515, p. 610.
In reaching this conclusion we do not take alone the vileness of the price as creating a legal presumption of negligence, notice, or malafides, but all the facts and circumstances of the case, among which are:
1. The vileness of the price and the absence of all proof that the securities were regularly and authoritatively quoted. •
2. The existence of the previous adjudication of this court recognizing the nullity of a large portion of the outstanding paper of the parish of Plaquemines.
*780 3. The shortness of time elapsing between the illegal issue of the bonds and the obtention of the injunction herein.
4. The defects in the bonds themselves.
5. The fact that the intervenors were brokers and dealers in securities and more likely to have been on their guard and held to a greater degree of diligence in order to shield themselves from the consequences of undue laches.
Reaching these conclusions, we deem it unnecessary to pass upon whether if the intervenors were holders under such circumstances as to cover them with the shield of the commercial law they would be held only to look to the legal power of the commissioners, as taught by so many recent cases decided by the Supreme Court of the United States. The doctrine of power, as thus applied, we take to be not a restriction on or enlargement of the fundamental principles of the law merchant. In other words, a doctrine teaching not that one who is not a third holder for value and before maturity, in the legal sense of the.term, is only chargeable with inquiry as to the power to have issued the securities, but that one who is such holder is bound, under all circumstances, to take notice of the power by which the securities were issued; such power being the measure of his right to recover, all other obstacles or equities being removed in consequence of his possessing the legal character of a third holder.
Of course, we understood our former decree as reserving any right of action for any legal consideration which may have seemingly been merged in the illegal bonds, or which had previously been ostensibly merged in the warrants declared to be illegal; our opinion then and now being that the non-existence of the bonds places the parties, in legal contemplation, in that position, as to rights and obligations, which they would have held had the bonds never been issued; saving, of course, such rights as passed to the holders of the bonds, and their consequent ownership of such prior legal rights absorbed by the' bonds or practically merged in them.
It is therefore ordered that our former decree remain undisturbed.
Mr. Justice DeBianc adheres to his former opinion.